**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| CARMEN RIVERA-FELICIANO, ET AL., |
| Plaintiffs, |
| v. |
| Anibal Acevedo-Vila, et al., |
| Defendants. |

CIV. NO. 05-1910 (PG)

**PRELIMINARY INJUNCTION**

The parties Carmen Rivera-Feliciano, Maria Flores-Feliciano, Mendelson Ortiz-Nicolau, Edgardo Hernandez-Ortiz, Ines Navedo-Vazquez, Gilberto Rivera-Rodriguez, Jose J. Rivera-Aneiro, Hector L. Rivera-Ortiz, Wilgberto Mario Feliciano, Carlos A. Rosario-Adorno, Domingo Gonzalez-Marie, Alexis Ortiz-Berrios, Angel Marcano-Ortiz, Pedro Beltran-Carrasquillo, and Luis Melendez-Ramos (collectively "plaintiffs"), and Anibal Acevedo-Vila, Governor of Puerto Rico; Roberto Sanchez-Ramos, Secretary of Justice of the Commonwealth of Puerto Rico; Miguel Pereira-Castillo, Secretary of Corrections and Rehabilitation of Puerto Rico and Administrator of Corrections of the Commonwealth of Puerto Rico; and Jose R. Lozada, Director of the Bureau of Special Investigations of the Commonwealth of Puerto Rico (collectively "defendants"), having appeared at a hearing held before this Court on September 2 and 5, 2005, and the Court having heard testimony and having received documentary evidence presented by the plaintiffs on the issues before it, and having heard arguments from both plaintiffs and defendants on the related legal issues, does hereby issue the Preliminary Injunction requested.

**DISCUSSION**

The standard for issuing a preliminary injunction is the often quoted four factor test: (1) the movant's probability of success on the merits, (2) the likelihood of irreparable harm absent preliminary injunctive

relief, (3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue, and (4) how the granting or denial of an injunction will interact with the public interest. New Comm Wireless Services, Inc. v. Sprintcom, Inc., 287 F.3d 1; 2002 WL 499324 (1st Cir. 2002); See also Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). The First Circuit has placed much emphasis on the importance of the first of these four factors, the likelihood of success on the merits. Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); see also Morales-Narvaez v. Roselló, 852 F.Supp. 104, 107 (D.P.R. 1994).

### A. Probability of Success on the Merits:

The gist of plaintiffs claim is that defendants' actions are violating their protected rights under the U.S. Constitution, specifically Article 1, Section 10; and the Fifth and Fourteenth Amendment which preclude governments from applying *ex post facto* laws to criminal defendants and from depriving citizens of their liberty interest without due process of law, respectively. Upon reviewing of the record and the evidence presented at the hearing, the Court finds that indeed plaintiffs' have a very high probability of succeeding on the merits of their claims.

It is well settled that "the ex post facto clause forbids not only legislative creation of new criminal liability after the event but also a legislative increase in punishment after the event." U.S. v. Lata, 415 F.3d 107, 110 (1st Cir. 2005)(citations omitted). See Miller v. Florida, 482 U.S. 423, 429 (1987)("Article I of the United States Constitution provides that neither Congress nor any State shall pass any ex post facto Law. See Art. I, § 9, cl. 3; Art. I, § 10, cl. 1."(internal quotation omitted). To determine whether a criminal law is *ex post facto*, two critical elements must be present: first, the law must be retrospective, that is, "it must apply to events occurring before its enactment;" and second, "it must disadvantage the offender affected by it." Lynce v.

Civ. No. 05-1910 (PG)                                                  Page 3

Mathis, 519 U.S. 433, 441 (1997)(quoting Weaver v. Graham, 450 U.S. 24, 29 (1981); see Miller, 482 U.S., at 430. The focus of the *ex post facto* inquiry is whether a legislative change alters the definition of criminal conduct or increases the penalty by which a crime is punishable. See Lynce v. Mathis, 519 U.S., at 441; California Dept. of Corrections v. Morales, 514 U.S. 499, 506, n. 3 (1995). "A law is retrospective if it changes the legal consequences of acts completed before its effective date." Miller, 482 U.S., at 429 (internal quotations omitted).

    Likewise, the fourteenth amendment "prohibits a state from depriving any person of life, liberty or property without due process of law." Johnson v. Rodriguez, 943 F.2d 104, 109 (1st Cir. 1991)(internal quotation marks omitted). "Whether any procedural protections are due depends on the extent to which an individual will be condemned to suffer grievous loss." Morrissey v. Brewer, 408 U.S. 471, 481 (1972)(internal quotation marks omitted). "The question is not merely the weight of the individual's interest, but whether the nature of the interest is one within the contemplation of the liberty or property language of the Fourteenth Amendment. Id. (internal quotation and citations omitted),

    The Electronic Surveillance Program ("the program") at issue here was originally created in 1989 as a part of a series of early release measures taken by defendants' predecessors to alleviate the overcrowding problem in Puerto Rico's correction system, all within the widely known prison reform litigation of Carlos Morales Feliciano, Civ. No. 79-04 (PG). At the inception of the program, inmates convicted of murder whether in the first or second degree could and were allowed to participate in the program. It was not until May 1995 that persons convicted of first and second degree murder were first excluded from participating in the program.

    Plaintiffs were all convicted of murder before the enactment of Law 49 of May 26, 1995, as well as Regulation No. 6041 of October 27, 1999,

Civ. No. 05-1910 (PG)                                                   Page 4

and Regulation No. 6797 of May 4, 2004, the law and regulations which preclude murder convicts from participating in the Commonwealth of Puerto Rico Administration of Corrections ("AOC") Electronic Surveillance Program. Plaintiffs were all validly admitted into the program pursuant to the applicable criteria and have complied with all the conditions imposed upon them by the AOC for continued participation in the program.

On August 26, 2005, however, defendants publicly announced that all the persons that had been convicted of murder and had been released through the program were to be re-incarcerated because they had concluded that murder convicts should have never had been allowed to participate in the program. Defendants based their position on a new interpretation of law issued by Secretary Pereira in April 2005 where, for first time since 1995 it was stated that persons convicted of murder could not participate in the program regardless of the date they had committed the criminal offense. According to defendants, the Department of Corrections had made an administrative error in all of its prior interpretations of Law No. 49 and its non-retroactive application, therefore, all murder convicts in the program had to be re-incarcerated. Hence, the August 26, 2005 public announcement.

The key date in the Court's analysis is the date plaintiffs committed their criminal offense. All plaintiffs committed murder and were sentenced before May 1995, date of enactment of Law 49. Accordingly, whether they had a right to continue participating in the program must be decided pursuant to the existing laws and regulations prior to May 1995. It follows then, that if murder convicts were not expressly excluded until May 1995, once plaintiffs were admitted to the program, after having fulfilled all the requirement of said program, they have a liberty interest in their continued participation in the program.

At the hearing, evidence was submitted to the effect that the 15 plaintiffs met the requirements and conditions of the program as of the

Civ. No. 05-1910 (PG)                                                    Page 5

date they received the benefit. Evidence was also proffered regarding several opinions and memoranda within the Department of Corrections explicitly indicating that persons convicted of murder prior to May 1995 would be eligible for the program and that Law 49 could not be applied retroactively. Evidence showed that plaintiffs fully complied with the programs' conditions and requirements. Lastly, the evidence revealed that the effect of the Department of Corrections' new interpretation would be fatal to plaintiffs inasmuch as the time they have been serving their sentence within the program would not be considered as time served for purposes of calculating their total years served.

It is clear that the defendants are trying to apply a law to events that occurred before its enactment and that said application disadvantages the offenders affected by it and has a direct impact on the rights of plaintiffs to continue in the program. See Lynce, 519 U.S. at 441 and Miller, 482 U.S. at 430. Furthermore, plaintiffs have acquired a liberty interest pursuant to applicable law and case law, and defendants have not afforded them due process. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Young v. Harper, 520 U.S. 143 (1997).

In sum, after evaluating the factual allegations, the applicable case law and the evidence proffered, the Court finds plaintiffs have demonstrated a likelihood of success on the merits.

**B. Irreparable harm to Plaintiff**:

As stated above, a finding that there is a high likelihood of success on the merits is enough to show that Plaintiff will suffer irreparable injury. The inevitable consequences that will ensue if plaintiffs are re-incarcerated, specially considering their current living, working, family, medical, and social conditions strongly indicates the irreparable and immense harm plaintiffs will suffer.

Civ. No. 05-1910 (PG)                                                    Page 6

### C. Balance of Hardships:

When fundamental constitutional rights are placed on a balance, it tips in favor of those whose basic rights are in jeopardy. As evidenced by the preceding discussion, what is as stake here is plaintiffs most fundamental rights.  Thus, while defendants may suffer hardship, the constitutional considerations at issue tip the balance in plaintiffs' favor.

### D. Public Interest

For years, the Department of Correction has issued opinions and memoranda indicating that persons convicted of murder prior to May 1995 may participate in the program.  For years, plaintiffs worked and strived to meet the requirements of the program and have participated in rehabilitative efforts with the aim of obtaining the privilege of participating in the program.  For years, they have abided by the Department of Corrections rules and regulations and have trusted its interpretation of the same.

Pursuant to the U.S. Constitution, the Commonwealth of Puerto Rico Constitution, the laws and case law, plaintiffs have an acquired interest in their liberty. They now face losing all they have legally attained simply because those who awarded them the right to participate in the program believe they made an administrative error.

The Court believes it is imperative that plaintiffs' constitutional rights be protected.

## CONCLUSION

For the reasons stated above, Plaintiffs' request for a preliminary injunction is GRANTED. Accordingly, defendants, their attorneys, agents, employees or other acting in concert with them, and their successors are

Civ. No. 05-1910 (PG)                                                    Page 7

hereby enjoined from applying Law 49 of May 26, 1995, as well as Regulation No. 6041 of October 27, 1999, and Regulation No. 6797 of May 4, 2004, retroactively to plaintiffs and are enjoined from removing plaintiffs from the Electronic Surveillance Program, and re-incarcerating them in any institution under the jurisdiction of the Administration of Corrections.

    It IS SO ORDERED.

    In San Juan, Puerto Rico, September 5, 2005.

                                  S/ JUAN M. PEREZ-GIMENEZ
                                  U. S. DISTRICT JUDGE